IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMANUEL REDDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 05-238-GMS |
| v. | ) | |
| | ) | |
| WARDEN KEARNEY, SGT. DUKES, | ) | |
| AND CORRECTIONAL OFFICER | ) | |
| WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

DEPARTMENT OF JUSTICE
STATE OF DELAWARE

*/s/ Linda M. Carmichael*
Linda M. Carmichael (#3570)
Erika Y. Tross (#4506)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

Dated: March 22, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................... i

TABLE OF CITATIONS ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................1

SUMMARY OF THE ARGUMENT ...............................................................2

STATEMENT OF THE FACTS. ......................................................................3

ARGUMENT.....................................................................................................5

      STANDARD OF REVIEW

           a.  Federal Rule of Civil Procedure 56(c) ...................................................5

I.      PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983...................6

II.     PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS SUED IN THEIR OFFICIAL CAPACITY ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY...................................................................................................7

III.    EVEN IF DEFENDANTS HAD BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY ......................................9

IV.    PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT BY WARDEN KEARNEY ........................................10

V.     PLAINTIFF'S COMPLAINT FAILS TO SUPPORT HIS CLAIM OF CRUEL AND UNUSUAL PUNISHMENT ...............................................12

           a.     No Support Exists for Plaintiff's Claims Against Defendant Kearney .....................................................................................13

           b.     No Support Exists for Plaintiff's Claims Against Defendants Sgt. Dukes and Correctional Officer Walker ........................................14

VI.    PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES IS FATAL TO HIS CAUSE OF ACTION ..........................16

CONCLUSION..............................................................................................19

## <u>TABLE OF CITATIONS</u>

*Accord Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005)..................................................10

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................9

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .........................................................5

*Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003) .............................................................12

*Baker v. Monroe Twp.,* 50 F.3d 1186 (3d Cir. 1995).........................................................10

*Booth v. Churner,* 206 F.3d 289 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001)....................17

*Carter v. Exxon Company USA,* 177 F.3d 197 (3d Cir. 1999) ...........................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................5

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).......................................................12

*Doe v. Cates*, 499 A.2d 1175 (Del. 1985).........................................................................9

*Edelman v. Jordan*, 415 U.S. 651 (1974) .........................................................................8

*Estelle v. Gamble*, 429 U.S. 97 (1976) ......................................................................12, 13

*Farmer v. Brennan*, 511 U.S. 825 (1994) .......................................................................13

*Gay v. Petsock*, 917 F.2d 768 (3d Cir. 1990).....................................................................12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .....................................................................9

*Hudson v. McMillian*, 503 U.S. 1 (1992).........................................................................12

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000).........................................................8

*Lee v. Mihalich*, 847 F.2d 66 (3d Cir. 1988).....................................................................9

*Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir. 1999) .........................................9, 10

*Natale v Camden County Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) ...........................15.

*Neeley v. Samis*, 183 F.Supp. 2d 672 (D.Del. 2002)...........................................................8

*Nyhuis v. Reno,* 204 F.3d 65 (3d Cir. 2000) .....................................................................17

*Pagano v. Hadley*, 535 F.Supp. 92 (D.Del. 1982) ...............................................................8

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984)...........................8

*Porter v. Nussle,* 534 U.S. 516 (2002)...............................................................................17

*Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)........................................10

*Rode v. Dellarciprete,* 845 F.2d 1195 (3d Cir. 1988).......................................................10

*Ryan v. Burlington County*, 889 F.2d 1286 (3d Cir. 1989)................................................9

*Sample v. Diecks,* 885 F.2d 1099 (3d Cir. 1989) .............................................................13

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ................................................8

*Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004) ...........................................................17, 18

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)..............................................6

*Wilson v. Seiter,* 501 U.S. 294 (1991)..............................................................................14

## Statutes and Other Authorities

Eighth Amendment of the United States Constitution....................................12, 14, 16, 19

Eleventh Amendment of the United States Constitution .............................................6, 7, 8

Fourteenth Amendment of the United States Constitution ..................................................8

Delaware Constitution of 1897, Article I, §9.....................................................................9

42 U.S.C. § 1983........................................................................................................ *passim*

42 U.S.C. §1997e(a)......................................................................................................16, 17

11 Del.C. § 6501 .................................................................................................................6

29 Del.C. § 8901 .................................................................................................................6

F.R.C.P. 56(c) ....................................................................................................................5

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiff Emanuel Redden ("Redden" or "Plaintiff") is an inmate presently incarcerated at Delaware Correctional Center ("DCC").  At the time of the events alleged in the Complaint, Plaintiff was incarcerated at Sussex Correctional Institution ("SCI"). Redden is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

On April 25, 2005, Redden filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Warden Kearney, Sgt. Dukes and Correctional Officer Walker (collectively "Defendants").  Redden alleges in his Complaint that he is entitled to punitive damages against each defendant and compensatory damages against Warden Kearney because Sgt. Dukes and Correctional Officer Walker "as [a] result of there [sic] dislike for [him], as [a] result of having heard about [his] past reputation in concert conspired to deny [him] medical attention."  (the "Complaint").  (D.I. 2).

Defendants filed their answer to the Complaint on May 26, 2006 (the "Answer") (D.I. 11).  In their Answer, Defendants denied the allegations in Redden's Complaint and denied that Redden was entitled to any relief.  (D.I. 11).

On July 26, 2006, this Court issued an amended scheduling order setting January 19, 2007 as the closing date for discovery.  (D.I. 13).  Further, by the terms of the amended scheduling order, all motions for summary judgment shall be served and filed no later than February 20, 2007.  On February 16, 2007, Defendants filed a Motion to Enlarge Time until March 22, 2007. (D.I. 20).  This Court granted the Motion to Enlarge Time on February 20, 2007.  This is Defendants' Opening Brief in Support of Their Motion for Summary Judgment.

## SUMMARY OF THE ARGUMENT

I.     PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983.

II.    PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS SUED IN THEIR OFFICIAL CAPACITY ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.

III.   EVEN IF DEFENDANTS HAD BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY.

IV.    PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT BY WARDEN KEARNEY.

V.     PLAINTIFF'S COMPLAINT FAILS TO SUPPORT HIS CLAIM OF CRUEL AND UNUSUAL PUNISHMENT.

      a.     No Support Exists for Plaintiff's Claims Against Defendant Kearney

      b.     No Support Exists for Plaintiff's Claims Against Defendants Sgt. Dukes and Correctional Officer Walker.

VI.    PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES IS FATAL TO HIS CAUSE OF ACTION.

## STATEMENT OF THE FACTS

Plaintiff claims that on July 18, 2004, he injured his left knee on a pointed piece of steel protruding from his bunk.  Complaint.  At the time, Plaintiff was incarcerated at SCI, Medium Security Unit, bunk 37 top.  *Id.*  Initially, Plaintiff's injury did not bother him.  Exhibit A, Plaintiff's January 17, 2007 Deposition at 23[1].  As such, Plaintiff did not tell any of the correctional officers that he had injured his leg.  Ex. A at 24.  Likewise, for the next few days, Plaintiff did not convey his injury to any correctional officer.  *Id.*

The first day that the Plaintiff noticed any swelling and/or bleeding of his left leg was on July 21, 2004.  Ex. A at 25-26.  Plaintiff appears to be uncertain whether he conveyed the status of his injury to Sgt. Dukes and/or Correctional Officer Walker on July 21, 2004 or July 22, 2004.  Ex. A at 27-32.  Similarly, the Plaintiff is unsure when he actually completed a sick call slip.  Ex. A at 35.  Initially, Plaintiff contended that he completed a sick call slip on July 21, 2004.  Later, Plaintiff admitted that Sgt. Hasting said he would add Plaintiff's name to the sick call list.  Plaintiff completed the sick call request form on July 22, 2004.  Exhibit B Plaintiff's Sick Call Request Form; Ex. A at 35, 49.

The day after the Plaintiff completed his sick call request form, July 23, 2004, he was called to be taken to the medical aid unit but did not appear.  Ex. A at 36; Ex. B, Exhibit C Statement of Keith Thompson.  The Plaintiff acknowledges that he fell asleep and did not report for sick call when requested.  Complaint at Statement of Claim; Ex. A at 38.  Plaintiff went to the infirmary on July 24, 2004 and received treatment for the injury to his left knee.  Complaint at Statement of Claim; Ex. A at 50).  Plaintiff was

---

[1] All relevant portions of Plaintiff's deposition transcript are attached hereto as "Ex. A at __").

prescribed antibiotics for his injury.  Ex. A at 52.  Plaintiff received ongoing treatment and his injury was healed in September 2004. Ex. A at 54.

<u>**ARGUMENT**</u>

**STANDARD OF REVIEW**

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

I.     **PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS ARE NOT "PERSONS" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983.**

The Plaintiff has named Warden Kearney as a defendant in this matter.  Warden Kearney is an employee of the Delaware Department of Correction, a component of the Executive Branch of government, The Department of Correction reports to the Office of the Governor and receives its statutory authority from the Delaware Code, Titles 11 and 29.  11 Del. C. § 6501; 29 Del. C. § 8901.  The Sussex Correctional Institution ("SCI") is a correctional facility within the Department of Correction.  Defendant Warden Kearney oversees the safety and security functions of SCI.  Defendant Warden Kearney in his official capacity cannot be considered "persons" as contemplated by the jurisprudence interpreting 42 U.S.C. § 1983.

The United States Supreme Court has held that a state official acting in his official capacity is immune from suit under 42 U.S.C. § 1983 because he is not a "person" under the statute.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Just as States themselves are protected from suit under the immunity granted by the Eleventh Amendment to the U.S. Constitution (See Argument V, infra), so are state actors in their "official" capacities.

As the Supreme Court in *Will* explained "[o]bviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself.  *Will*, 491 U.S. at 71.  As a preliminary matter, the complaint is captioned against Warden Kearney, by reference to his official state title.

Plaintiff's complaint, while vaguely pled, clearly stems entirely from the action taken while the Plaintiff was incarcerated at SCI. The fact that Plaintiff now seeks damages against Warden Kearney as a result of any perceived delay in his medical treatment does not negate that any action taken was taken by Warden Kearney in an official capacity as the Warden of SCI. (Complaint ¶ V). Thereby, all actions allegedly taken by Warden Kearney occurred in his official capacity as Warden and he may not be considered a "person" subject to suit in this Court.

Lastly, all the grievances set forth in Plaintiff's complaint, as to Sgt. Dukes and Correctional Officer Walker, clearly stem entirely from these defendants' actions taken in their official capacity as correctional officers of SCI (i.e., checking cells, counts, reviewing sick leave procedures, etc.). The fact that Plaintiff is not satisfied with the performance of the correctional officers' official job duties does not negate that their actions were taken in an official capacity, and does not give rise to a cause of action in this Court. The individual correctional officers are not "persons" subject to suit in this Court.

## II. PLAINTIFF'S COMPLAINT FAILS AS STATE OFFICIALS SUED IN THEIR OFFICIAL CAPACITY ARE IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.

The sovereign immunity of the states is found in the Eleventh Amendment to the United States Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Further, the United States Supreme Court has held that in the

absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65 (1996). "Congress' powers under Article I of the Constitution do not include the power to subject States to suit at the hands of private individuals." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed." *Neeley v. Samis*, 183 F.Supp. 2d 672, 678 (D.Del. 2002) (*citing Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98-100 (1984). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive state immunity will produce this result. *Id.*

No such clear intent can be seen in 42 U.S.C. § 1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 U.S.C. § 1983. Neither the State of Delaware nor its officials acting in their official capacity are "persons" as contemplated by 42 U.S.C. § 1983.

To the extent plaintiff claims any violations of state laws, the Doctrine of Sovereign Immunity also bars such a claim. *See Pagano v. Hadley*, 535 F.Supp. 92 (D.Del. 1982). Sovereign immunity provides that the State and its agencies may not be

sued without consent.  *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175, 1881 (Del. 1985).  No such consent exists here.

### III.    EVEN IF THE DEFENDANTS HAD BEEN SUED IN THEIR INDIVIDUAL CAPACITIES, THEY WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY

There is nothing in the instant complaint to support a claim against the Defendants in their individual capacities.  The Third Circuit has held that the proper analysis is for the trial court to first determine whether the Plaintiff asserts a valid violation of a constitutional right, before considering immunity issues.  *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999).  Plaintiff here has not made that showing.  Nonetheless, Plaintiff's claims (assuming any exist) against Defendants in their individual capacities would be barred by the doctrine of qualified immunity.[2]

It is well settled that government officials performing discretionary functions enjoy qualified immunity from damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988) (*citing Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (*Lee v. Mihalich* abrogated on unrelated grounds per *Albright v. Oliver*, 510 U.S. 266 (1994)).  The test is one of "objective legal reasonableness" of an official's acts.  *Lee*, 847 F.2d at 69.  Defendants are entitled to qualified immunity unless Plaintiff can show that (1) his "right" is clearly established by law, and (2) the "unlawfulness must be apparent."  *Id.*

---

[2] As the Third Circuit held in *Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989) "[t]he defense of qualified immunity is a recognition of the fact that subjecting public officials to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." *Id.*

In *Miller*, the Third Circuit, citing Supreme Court authority, held that where abusive action is alleged against a government official, there will be no constitutional liability unless the "action [is] so ill-conceived or malicious that it 'shocks the conscience' . . . officials will not be held liable for actions that are merely negligent." *Miller*, 174 F.3d at 375 (citations omitted).

Applying the *Lee/Miller* test, it is clear that Plaintiff has not pled any facts that would defeat the qualified immunity of the individual Defendants. Once he provided notice of his injury to correctional officials, Plaintiff was provided with medical treatment. Further, Plaintiff has pled no facts to show any action on the part of the Defendants that was malicious or that "shocks the conscience." As plaintiff fails to set forth any factual basis that would defeat the defense of good faith immunity, the Defendants are not subject to liability.

## IV. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT BY WARDEN KEARNEY.

Plaintiff's failure to show personal involvement by Defendant Kearney is fatal to his claim. "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). *Accord Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005)*; Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-96 (3d Cir. 1997); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

In his complaint, Plaintiff alleges that Warden Kearney "authorized the use of the mesh wire screen to be used as bunk bed material" on which Plaintiff alleges he injured

his left knee.  Complaint at ¶ IV.  The only other reference to Defendant Kearney in Plaintiff's complaint is in the relief section, where the Plaintiff states that he seeks relief for "compensatory damages from Warden Kearney in the amount of $150,000.00." Complaint at ¶ V.

During Plaintiff's deposition he was asked specifically why Warden Kearney was named as a defendant in this action.  Ex. A at 7.   Defendant responded "[b]ecause the bed was moved and placed in those areas under his authority.  He is in charge of the Sussex Correctional Institution."  *Id.*  When questioned further regarding the difference between what someone does personally and what their employees do, Plaintiff responded that "the difference is that the employees do it and the one in charge is responsible for the actions, too."  Ex. A at 8.

Plaintiff admits that he never spoke with Warden Kearney.  *Id.*  Although, Plaintiff asserts that he wrote to Warden Kearney on several occasions in September 2004, this correspondence was about being placed in behavior modification not about the allegations contained in the instant action.  Ex. A at 7-8.  Lastly, Plaintiff admits that Warden Kearney did not cause his injury nor did Warden Kearney prevent him from seeking or receiving medical treatment.[3]  Ex. A at 47.  As such, plaintiff did not file a grievance against Warden Kearney.  Ex. A at 61.

---

[3] Q     Mr. Redden, did Warden Kearney cause you to injure your leg on the bunk?
A     No, ma'am.
Q     Did you see him cause the metal to protrude from your bunk?
A     No, ma'am.
Q     Did he prevent you from filling out a sick call slip prior to July 22nd?
A     No, ma'am.
Q     Did he prevent you from getting to your infirmary appointment on July 23rd?
A     No, ma'am.

Regardless of the type of § 1983 claim asserted, Plaintiff must show personal involvement by Warden Kearney to succeed. It is well established that the theory of *respondeat superior* is not an acceptable basis for liability under § 1983. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985). Without identifying how he participated, directed, or acquiesced in the events which Plaintiff claims deprived him of his constitutional rights, Defendant Kearney cannot be held liable and summary judgment is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990).

## V.    PLAINTIFF'S COMPLAINT FAILS TO SUPPORT HIS CLAIM OF CRUEL AND UNUSUAL PUNISHMENT.

Under the Eighth Amendment's proscription against cruel and unusual punishment, prison officials are required to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). To maintain a cognizable claim for violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

In order to satisfy the first prong of the *Estelle* inquiry, an inmate must demonstrate that his medical needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Thus, Plaintiff must show a "serious medical need" by demonstrating a need (1) that "has been diagnosed by a physician as requiring treatment"; (2) that "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) for which "the denial of treatment would result in the unnecessary or wanton infliction of pain [or] a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003).

The second prong of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  To show "deliberate indifference" a plaintiff must demonstrate a sufficiently culpable state of mind on the part of the defendant. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### a.    No Support Exists for Plaintiff's Claims Against Defendant Kearney

Defendants do not controvert that Plaintiff satisfactorily alleges that he had a "serious medical need."  However, Plaintiff's unsupported allegations are insufficient to prove the second prong of *Estelle* – "deliberate indifference" on the part of the Defendants. Here, Plaintiff does not allege that Defendant Kearney had any personal knowledge of, or involvement in, his medical treatment, and thus, fails to allege any facts that could establish "deliberate indifference" on the part of Defendant Kearney with regard to the instant complaint.  The only statement in the complaint that mentions Defendant Kearney is the assertion that he "authorized the use of wire mesh on the bunk beds."  Complaint at ¶ IV.  Plaintiff never spoke with, or wrote to, Defendant Kearney regarding his denial of medical treatment. Ex A. at 7-8, 47.

A supervisory official can be held liable only if the plaintiff successfully pleads and establishes "deliberate indifference" to the plight of the person deprived of his or her constitutional rights.  S*ample v. Diecks*, 885 F.2d 1099, 1116-1118 (3d Cir. 1989) (holding that plaintiff must identify with particularity what the prison official failed to do

that demonstrates deliberate indifference and demonstrates a close causal relationship between the deficiency and the ultimate injury). *Wilson v. Seiter*, 501 U.S. 294 (1991). Because no set of facts consistent with the allegations in the complaint could reasonably establish supervisory liability against Defendant Kearney, Plaintiff's complaint fails to state a claim and Defendant Kearney's Motion for Summary Judgment is appropriate.

      **b.**    **No Support Exists for Plaintiff's Claims Against Defendants Sgt. Dukes and Correctional Officer Walker**

Plaintiff claims that Sgt. Dukes and Correctional Officer Walker should be held liable for violation of his Eighth Amendment rights because they denied him medical attention and/or were indifferent to his medical needs.  Complaint at Statement of Claim. Plaintiff, however, cannot prove his allegations because they are false.

Plaintiff claims that on July 18, 2004, he injured his left knee on a pointed piece of steel protruding from his bunk.  *Id.*  Because the injury did not bother him, Plaintiff did not notify any correctional officer of his injury until July 21, 2004.  Ex. A at 23-24. The first day that the Plaintiff noticed any swelling and/or bleeding of his left leg was on July 21, 2004.  Ex. A at 25-26.  Plaintiff appears to be uncertain whether he conveyed the change in status of his injury to Sgt. Dukes and/or Correctional Officer Walker on July 21, 2004 or July 22, 2004.  Ex. A at 27-32.  Similarly, the Plaintiff is not certain when he actually completed a sick call slip.  Ex. A at 35.

Initially, Plaintiff contended that he completed a sick call slip on July 21, 2004, but after further discussion, Plaintiff admits that Sgt. Hasting said he would add Plaintiff's name to the sick call list.  Ex A. at 35.  Plaintiff completed his sick call request form on July 22, 2004.  Ex. A at 35; Ex.2.

14

The day after the Plaintiff completed the sick call request form, he was called to be taken to the medical aid unit but did not appear. Ex. A at 36; Ex. 2. The Plaintiff acknowledges that he fell asleep and did not report for sick call when requested. Complaint Statement of Claim; Ex. A at 38.

Plaintiff cannot show that Defendants Sgt. Dukes and Correctional Officer Walker were "deliberately indifferent" to his medical needs such that they knew of or disregarded an excessive risk to the Plaintiff's health. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 852 (3d Cir. 2003). By contrast, once the Plaintiff submitted a request to be seen by the medical staff his name was put on the sick call list for the following day. Ex 2. Plaintiff did not appear when he was requested to report for sick call. Complaint Statement of Claim; Ex. A at13. The very next day, Saturday, Plaintiff was seen in the infirmary and treated with antibiotics. Exhibit D Plaintiff's Medical Records at D00001-4.[4] The medical records indicate that Plaintiff did not complain of severe pain at this time. *Id.*

On Monday, July 26, 2004, after the Plaintiff was examined by the Doctor, he was admitted to the infirmary. Ex. D at D00005-6. Plaintiff remained in the infirmary until August 2, 2004 when he was released to general population. Ex. D at D00007-23. Follow-up medical care was provided to the Plaintiff on a weekly basis as prescribed by his physician. Ex. D at D000021-23. Plaintiff's medical records indicate that throughout his medical stay in the infirmary, he did not complain of left knee pain. Ex. D at D00007-17. The Plaintiff's medical records evidence undisputed facts that the Plaintiff received numerous medical evaluations and treatment once he notified the correctional

---

[4] All relevant portions of Plaintiff's medical records are attached hereto as "Ex.D at D__").

authorities of his injury and reported for sick call.  No deliberate indifference can be found because Defendants Sgt. Dukes and Correctional Officer Walker did not refuse medical treatment after becoming aware of Plaintiff's need.  Plaintiff's bare assertions that Defendants Sgt. Dukes and Correctional Officer Walker knew of his condition, deliberately refused to treat it in a timely manner, and did so for non-medical reasons are not supported by the documentary evidence presented in support of Defendants' Motion for Summary Judgment.  Therefore, Plaintiff cannot support a claim of violation of his Eighth Amendment rights and the Defendants' Motion for Summary Judgment should be granted.

### VI.    PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES IS FATAL TO HIS CAUSE OF ACTION

Plaintiff brings this action pro se, while he was incarcerated.  The Plaintiff alleges claims under 42 U.S.C. § 1983.  The Prison Litigation Reform Act ("PLRA") of 1995 became effective on April 26, 1996, and amended a variety of statutory provisions governing litigation by prisoners, specifically those brought under 42 U.S.C. § 1983. Thus, the PLRA is applicable to the instant action.

The PLRA contains an "exhaustion of remedies" provision.  42 U.S.C. § 1997e(a) which provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Plaintiff's complaint is clearly subject to § 1997(e)(a)'s exhaustion of remedies requirement. In two recent opportunities to address challenges to the PLRA's exhaustion requirement, the Supreme Court emphatically rejected efforts to chip away at the scope of the exhaustion requirement. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that § 1997e(a) is applicable to all inmate claims except those challenging the fact or duration of confinement); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (finding that inmates must exhaust available remedies with prison officials regardless of the availability of monetary relief in such administrative proceedings). The United States Supreme Court requires a plaintiff to exhaust administrative remedies even where the grievance process would not provide him with the remedy that he is seeking in his federal court action. *Booth v. Churner*, 206 F.3d 289, 294-95 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); see also *Nyhuis v. Reno*, 204 F.3d. 65, 71 (3d Cir. 2000) (holding that there is no "futility" exception to the prisoner exhaustion requirement).

The Third Circuit strengthened the PLRA's administrative exhaustion requirement by holding that it includes a "procedural default" component. Accordingly, an inmate is required to follow the grievance process through every appellate step in order to properly exhaust administrative remedies. *Spruill v. Gillis*, 372 F.3d. 218, 230 (3d Cir. 2004). The PLRA's "goals are obviously served by a procedural default rule because such a rule prevents an end-run around the exhaustion requirement." *Id.*

SCI has a grievance process and procedure. *See* Exhibit E. Pursuant to this procedure, an inmate who wishes to grieve a particular issue must express the grievance in writing. The only complaints specifically excluded from the grievance process are those concerning disciplinary and classification actions and parole board decisions. *Id.*

17

Pursuant to this procedure, while an inmate may apply to the court for judicial relief with respect to his grievance, he is required to "first exhaust all facility administrative grievance and appeal procedures." *Id.*

In this case, the Plaintiff filed a grievance in connection with his alleged delay in medical treatment. Exhibit F Plaintiff's Grievance. Plaintiff's agreed to "write off" on the grievance and requested to "leave[] it up to the IGC [Inmate Grievance Chair]" *Id.* at 1; Ex. A at 44. The grievance filed by the Plaintiff mentions only Correctional Officer Walker. Exhibit F at 1. Further, Plaintiff admits that he did not file any grievance against Warden Kearney. Ex. A at 61. Plaintiff has not even begun the grievance process against Warden Kearney and Sgt Dukes, he could not have possibly exhausted it. Likewise, the grievance that was filed against Correctional Officer Walker appears to have been "resolved." Plaintiff failed to avail himself to all available administrative remedies. This failure is precisely what the holding in *Spruill* seeks to address. Since Plaintiff failed to exhaust his administrative remedies and is therefore barred from pursuing this action, Defendants are entitled to summary judgment.

## CONCLUSION

Defendants Warden Kearney, Sgt. Dukes and Correctional Officer Walker did not violate Emanuel Redden's constitutional rights.  Because no reasonable jury could find that Redden's Eighth Amendment rights were violated, Defendants' Motion for Summary Judgment should be granted.

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Linda M. Carmichael*
Linda M. Carmichael (#3570)
Erika Y. Tross (#4506)
Deputy Attorneys General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I, Linda M. Carmichael, Esq., hereby certify that on March 22, 2007, I caused a true and correct copy of the attached ***Defendants' Opening Brief In Support Of The Motion For Summary Judgment*** to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT:**

Inmate Emanuel Redden
SBI #00092507
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

*/s/ Linda M. Carmichael*
Linda M. Carmichael (#3570)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400