In The United States District
Court
For THE District of Delaware

Emanuel Redden
      Plaintiff

                              Civil Action
v.                            No. 05-238-Gms

Warden Kearney,
Sgt. Dukes, And
Correctional Officer
Walker,
            Defendants.

FILED

APR – 5 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Plaintiff's Brief in Opposition
to Defendants motion for Summary
Judgment

                    Emanuel Redden
                    Pro Se

Dated: April 2, 2007

## STATEMENT OF FACTS

On July 18, 2004, while confined to the medium security Building At Sussex Correctional Institution.

Plaintiff clearly states that on the Above date At said Institution And while climbing onto his Assigned bunk bed #37, Top bunk, Plaintiff injured his left knee on A piece of steel protruding from the edges of his bed. The piece of steel was part of A mess wire security screen that had been tack weilded to the bunk bed After the original materials had been removed.

Plaintiff clearly states that after receiving said injury to his left knee, Plaintiff was refused Emergency medecal Attention on the 21st, 22nd And 23rd of July 2004, by Medium building Supervisior Sgt. Dukes And Correctional Officer Walker.

Finally on July 24, 2004, After Plaintiff finished eating lunch, Sgt. Dukes called Plaintiff And Asked him did he submit Another sick call slip for the 24th of July 2004, Plaintiff stated that he had.

## STATEMENT of Facts
## II

Plaintiff clearly states that upon his Arrival at the prison hospital, he was Accused by Nurse Brenda of refusing to come to the hospital after being sent for, I explained to her that I never refused medical Attention but was stopped from coming to the hospital by correctional officer Walker And Sgt Dukes,.

On Monday the 26th of July 2004, Plaintiff was admitted to the prison hospital for 8 days, where he received treatment for his left Knee injury until September 2nd 2004 while he was still in Medium Building.

On Friday the 3rd of September 2004, Plaintiff was sent to the Behavior Modification Unit for Reprisal for Filing A grievance by Sgt Dukes, where Plaintiff received Final treatment for his injury.

See: Exhibits 1 And 2

# ARGUMENT

## Standard of Review

To obtain Summary Judgment the moving party must demonstrate that he has met the standard of Fed. Rule 56(c) CARTER V. EXXON COMPANY USA, 177 F 3d 197, 202 (3d Cir. 1999). Federal Rule 56(c) permits A Court to grant summary judgment, [If ] the pleadings, depostions, ANswers to interrogatories, And admissions on file, together with Affiduts, if any, show that there is NO geNuine issue As to Any material Fact And that the moving party is entitled to a judgment As a matter of law.

Thus only disputes that Affect the outcome of a lawsuit will properly preclude the grant of summary judgment. Anderson V. Liberty Lobby, INC. 477 U.S. 242, 248 (1986)

At the summary judgment stage the Judge's function is Not himself to weigh the evidence And determine the Truth of the matter but to determine whether there is A genuine issue for trial. Id. 249

## Argument II

In deciding a motion for summary judgment, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a virdict for the plaintiff on the evidence presented". Id. at 252

The United States Supreme Court holds that a court must enter summary judgment, "Against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)

Consequently, having found genuine factual issues which precluded the district court's grant of summary judgment to the BOP, the D.C. Cercuit reversed the lower court's ruling and remanded the case to district court with intructions to consider the above -discussed issues. See: Maydak v. United States, 363 F.3d 512 (D.C. Cir. 2004)

## I
## Plaintiff legally exhausted Administrative Remedies

Plaintiff on or About August 2, 2004, upon his release from the prison hospital, filed a #584 Inmate Grievance form, charging Sgt. Dukes and Correctional Officer Walker with denial of medical care.

Plaintiff clearly states that he never had a Level I hearing on his grievance Against Sgt. Dukes And C/O Walker prior to his Level II hearing before the Inmate Grievance Board / I.G.B.

Plaintiff clearly states that All references to him telling the Inmate Grievance Chairman that, "Plaintiff was "leaving it up to him", Are false.

Plaintiff clearly states that on or About September 14, 2004, he went befor the Inmate Grievance Board — which voted to verbatly Reprimand Sgt. Dukes And C/O Walker for denying me medical Attention.

## I-A

Plaintiff clearly states that only after the prism staff members that were present, Lt. Johnson, Lt. Sturgis and prism counselor Mrs. Kromla that, "To sign off on my Grievance would be the best resolution; did Plaintiff sign off on said Grievance, to reiterate, After the prism staff members voted to verbally preprimand Sgt. Dukes and C/O Walker.

Plaintiff understood that the vote by the Inmate Grievance Board staff was an acknowledgment and a finding of Guilt Against Sgt. Dukes and C/O Walker, hence Plaintiff had no reason to "Appeal" the decision by the Inmate Grievance Board to the Next Level III

## I-B

The Supreme Court reversed, holding that Kellogg... Alledge that he... pursued Available Administrative remedies and that his Allegations Are sufficent to withstand a motion to dismiss" on his §1983 Claim.

I-B cond.

SEE: Kellogg v. Nebraska Department
of Correctional Services, 269 Neb. 40,
690 NW. 2d 574 (Neb. 2005)

Plaintiff clearly states that he
Sufficiently pleaded his exhaus-
tion of Administrative remedies
As required by 42 U.S.C. § 1997e(A)
of the Prison Litigation Reform Act
(PLRA).

Plaintiff clearly states that, he
should not be held in procedural
default, for he followed the re-
commendation And Advice of the
Inmate Grievance Board / I.G.B. And
of his Counselor Mrs. Kromia who
was a member of the I.G.B. And
whom Advised him to "Sign off"
on his grievance in the favor of A
verbal reprimand, which is also
An Admittence of guilt And/or A
finding of guilt

I-C

In Johnson v. Rivera, 272
F.3d 519 (7th Cir. 2001) Here, of
course, Johnson never completed

## I-C cond.

the Administrative process. But Johnson properly pled the complaint of willful destruction of his grievance, which the court ruled it would not simply set aside. Accordingly, the case was remanded to permit Johnson's suit to proceed in the district court.

Hence Plaintiff contends that he should be permitted to proceed in his suit against the Defendants in order to allow a jury and/or a Finder of Facts to decide the merits of the evidence.

The court then followed the reasoning of the 7th Circuit in String V. David, 297 F.3d 646 (7th Cir. 2002) concluding that prison grievance procedure supply the yardstick for measuring procedural default. Hence if Plaintiff is following the procedural policy of the Inmate Grievance Board, then there should be no procedural default

## I-D

The Prison Litigation Reform Act,

I-D cond.

was not established by Congress to be used by the Prison Administration as an Improvised Explosive Device (IED) and/or as a time-bomb to blow up on an unsuspecting prisoner on his journey to justice, hence prisoners should be given every opportunity to defend himself in such an important faze of his constitutional Right - for no legal advice was afforded Plaintiff at any point. Congress makes laws, therefor Plaintiffs should be given legal help in understanding them, for Congress did not intend for those that sought relief via the Prism Litigation Reform Act to be punished for doing so. Plaintiff clearly states that within 30 days of filing said grievance against the defendants, he was assaulted twice, continuously harrassed and locked up in Super Maximum security, since September 3rd, 2004 until this date because of my said filing of grievance against the defendants, even though the P.L.R.A. clearly forbids acts of Reprisals against those that seek legal recourse.

## I-E

Even if defendant's claims were
True that Plaintiff failed to ex-
haust the state grievance remedify
procedure.

Accordingly, failure to exhaust was
excusable here because "there is an
Absence of Available state correc-
tive process" 28 U.S.C. § 2254(b)(1)
(B)(i).

Furthermore, the prison officials
fortfieted by waiver the regulations
in the Prison Litigation Reform
Act, when the Inmate Grievance
Board voted to Verbally reprimand
the defendants, which is an inference
of guilt, and by denying Plaintiff the
Protected conduct afforded him in the
PLRA. Against "reprisals" for filing
said grievance, when the I.G.B. never
even considered listening too, let
Alone reveiwing Plaintiff's ~~Claims~~
Even though Plaintiff was in the Hole
At the time of his grievance on a
charge from Sgt. Dukes, whom
Plaintiff was grieving Against at
said I.G.B. hearing.

## II

## Under Color of State Law
## Warden Kearney is liable
## In his individual capacity

In Plaintiffs §1983 form, it clearly states that the defendant is liable, for the state of Delaware Never gave Warden Kearney permission And/or the Authority to re-make, make, or construct And/or re-build broken bunk beds on state property.

Therefor defendant was not Acting in his official capacity as designated under state law And/or in his job description, but "Acting under color of state law".

Plaintiff injured his left Knee on A re-builded prism bunk bed that was re-built on prism grounds by employees under Warden Kearney, on July 18, 2004. On August 3rd 2004, the maintence department came into Medium building And filed down the protruding steel points that Plaintiff had previously injured his Knee on, which goes Against the old adage, "if it Ain't broke, don't fix it".

## II-A

While being held in Behavior modification unit #4 at Sussex Correctional Institution, S.C.I., Plaintiff wrote to defendant Kearney in compliance with Prison Litigation Reform Act mandates and inform him of the "Reprisals" that I was being subjected too by defendants Sgt. Dukes and C/O Walker for filing a grievance against them, but he never responded to my letter and this was prior to my filing a lawsuit against him.

Plaintiff has been confined since being Administratively transferred from S.C.I. in March 1st, 2005 to Smyrna's Super Max for fictions wents that never transpired at S.C.I.

Plaintiff is still being "punished" for filing said grievance and lawsuit Against said defendants; which is not what Congress intended upon the creation of the Prison Litigation Reform Act.

See: Exhibits 4, 5, 6.

II-B

WARDEN KEARNEY IS NOT IMMUNE
from civil Action and/or liability
for PlAINtiff's INjury. The Second Circuit
Court of Appeals "upheld" A lower court's
denial of Fed. R. Civ. P. 12(b)(6) motion to
dismiss, Asserting A qualified immunity
defense.

The motion may be granted only
where "it appears beyond doubt that the
PlAINtiff CAN prove NO set of FActs IN
support of his clAim that would ENtitled
him to relief" CitibANK, N.A. V. K-H
corp, 968 F. 2d 1489, 1494 (2d Cir. 1992)
Thus, the plAINtiff is ENtitled to All
reasonable inferences from the facts
Alledged, not only those that support
his clAim, but Also those that defeat
the immunity defense.
... the defense faces A formidable hurdle
when Advanced on such A motion". Id
Turning to the merits of defendants'
qualified immunity defense, the court
[A]greed with the district court that
defendants" CANNOt have the complaint
dismissed At the pleading stage on the
basis of qualified immunity.
See: MCKENNA V. Wright, 386 F.3d 432
(2nd Cir. 2004).

II-C

Goodman, a paraplegic Georgia state
state prisoner, sued state defendants
in federal district court under 42
U.S.C. § 1983 and Title II of the ADA
for violation of his Eighth Amendment
rights as to cruel and unusual punish-
ment.

In Francis v. Resweber, 329 U.S.
459 (1947), [Due Process Clause of
the Fourteenth Amendment incorpo-
rates the Eighth Amendment's gua-
rantee against cruel and unusual
punishment],

The United States Supreme Court,
observed that although Goodman's
claims were formulated only under
the Eighth Amendment (cruel and unusu-
al punishment), they also appeared
sound, at least in part, in § 1 of the
Fourteenth Amendment [no deprivation
of life, liberty or property without
due process of law]. It is established
that state conduct that actually violates
the Fourteenth Amendment Trumps the
Eleventh Amendment sovereign immunity
of the States. Tennessee v. Lane, 541 U.S.
509 (2004) and Ex Parte Virginia, 100
U.S. 339 (1880)
See: United States v. Georgia 126 S.
Ct. 877 (2006).

## II. D

Because Goodman had not expressly
alleged Fourteenth Amendment
violations, only Eighth Amendment
ones, the Court held that he should
be allowed to amend his complaint,
if possible. Id.

## II. F

Warden Kearney is liable in his
supervisory capacity.

In Macotte v. Monroe Corrections
Complex, 394 F. Supp. 2d 1284 (W.D.WA
2005), the United States District
Court for the Western District of
Washington held that, fact issues
as to whether the defendants acted
with deliberate indifference pre-
vented summary judgment.
Judge James Robart further held that
a jury could reasonably find Superin-
tendent Moore and Doctor John Kenney
liable in their supervisory capacity,
and that disputed material facts
prevented the court from making a
determination regarding qualified
immunity. Id.

Therefore, Warden Kearney should be
denied qualified immunity status as
a matter of law.

III

## Sgt. Dukes

After Plaintiff injured his knee in Medium Security Building on July 18, 2004, where Sgt. Dukes was the supervisor in charge.

Plaintiff continually complained to Sgt. Dukes about his injury from the 21st to the 24th of July.

Plaintiff even showed Sgt. Dukes his bloody and bleeding wound on his left knee.

Sgt. Dukes showed deliberate indifference and subjected Plaintiff to cruel and unusual punishment by denying Plaintiff medical treatment. After requesting help from Sgt. Dukes, he came into the dormitory where Plaintiff lived at the time and gave Plaintiff 4 pieces of cardboard from a prism cereal box and told Plaintiff to tape them to his bunk bed, when Plaintiff said that, he did not have any tape, Sgt. Dukes just turned around and walked away. This was July 21, 2004.

## III - A

After Plaintiff finished eating lunch on Saturday July 24, 2004, Defendant Sgt. Dukes called my name and motioned for me to come to him, where he asked me did I put in another "sick call slip", and I responded, yes — then Sgt. Dukes told me to "go to the hospital".

Once I arrived at the hospital I was accused by nurse Brevard of refusing to come to sick call after she had sent for me — and I stated that I never refused to come to sick call, no one told me — then I pulled up my left pant leg and said; how could I refuse to come to sick call with my knee like this.

On July 26, 2004, I was admitted to the hospital in order to receive constant treatment for my wound. I stayed there in the hospital for 8 days.

After my release from the hospital, I filed a grievance against Sgt. Dukes for denial of medical care.

## III-B

Plaintiff clearly states As A fact that, After filing A grievance Against Sgt. Dukes, the defendant started harrassing Plaintiff by subjecting him to shake downs of his property) claiming that he was searching for tobacco - when Plaintiff said that he has not smoked in 30 years, Sgt. Dukes said that I was the perfect candidate to hide tobacco.

Later on that week, Plaintiff was struck on the right side of his neck by An officer in medium security while playing cards.

The next week, Plaintiff was sitting in A chair praying, After I was finished praying, Sgt. Dukes came on the dormitory block And bumped me hard with his belly And kept hollering, hit me, hit me, go ahead hit me, when I turned my back on him And walked away, He said, I'ma lock you up, Pack your stuff up, As I was packing up to go to the hole, two young muslims said, if you lock him up we Are going to the hole too!!

## III-C

Sgt. Dukes then told me to unpack my property and then shook my hand in an attempt to keep me from filing a grievance against him.

On September 2nd, 2004, I filed a grievance against Sgt. Dukes for intentionally bumping me with his belly.

The following day on September 3rd, 2004, Sgt. Dukes called me to the front gate and said that he wanted to talk to me, when I went to see what he wanted, I was immediately surrounded by 5 guards and a big german shepard dog and handcuffed behind my back and taken to the Behavior Modification unit and locked up for inciting to riot and two charges of group demostration, all charges were signed out on me by Sgt. Dukes in his continuing campaign of harrassment against me, and plaintiff is still locked up for those charges with no relief in sight, and this has been going on for 2 1/2 years.

## III-D

Plaintiff clearly states that Sgt. Dukes in his supervisory role of the unit where Plaintiff injured his knee and as defendant C/O Walker's immediate supervisor, was aware at all times of Plaintiff's injury, medical condition and needs, but showed deliberate indifference towards Plaintiff's injury and thereby subjecting Plaintiff to cruel and unusual punishment by giving Plaintiff 4 pieces of cardboard from a cereal box to cover up the protruding pieces of steel of the institutional mesh wired security screen that was tack welded to Plaintiff's bunk bed and stating that "he'll put in a work order, and turned around and walked away after Plaintiff said that he had no tape in order to tape the cardboard to his top bunk bed. The work order to fix Plaintiff's bunk bed was carried out on August 3rd, 2004, two weeks after Plaintiff received the cardboard from defendant Sgt. Dukes. For the defendants malicious and sadistic treatment of Plaintiff, he should be denied summary judgment, for he has not presented to the court any material facts.

## IV

## Correctional Officer
## Walker

C/O Walker was the officer working on the 21st of July and to whom, I showed my bloody and pus filled leg to, while it was draining. I told him that Sgt. Sam Hastings said that he was going to pencil me in on the sick call list for that day, he responded that he did not know anything about that. I requested to go to the prism hospital because my knee was hurting, C/O Walker said that I had to wait until they called for me — and I asked him, how was the hospital going to send for me if they did not know that anything was wrong with me, C/O Walker responded that, "that was the procedure, you can't go to sick call until they call you, And as he turned to walk away, I asked could I see Sgt. Dukes, C/O Walker said that Sgt. Dukes was busy and left the dormitory.

IV-A

ON Thursday July 22, 2004,
PLAINTIFF AGAIN showed C/O WALKER
his bloody And pus filled Knee,
And requested medecal Attention,
Again, C/O WALKER said that there
was nothing that he could do, I
Asked him again could he please
Call the hospital because my Knee
was Constantly bleeding, As he could
well see, for I had on A pair of
white institutional pants And they
was blood soaked, C/O WALKER said
that he would get back to me.

ON friday, July 23, 2004, while
sleeping ON the top bunk, one of
my muslim brothers that slept
Next to me And whom was helping
me to get IN And off of the Top bunk,
Awaken me And said that had just
called my NAme for SICK CAll — As
the muslim helped me to get to the
front gate of the dormitory And
Asked to be let out, AN OFFicer
came And opened the gate for me,
[if] there was A code Yellow, he
would NEVER have opened the gate.
As defendants claim.

## IV-B

As PlaiNtiff was heading out the open front door, C/o Walker, whom, was standing beside Sgt. Dukes, came waiking up to me like John wayne And said Sick CAll is over with, I said, but they just called my name for SICK CALL, C/o Walker said AgaiN, Sick CAll is over with, so I just returNed to the dormitory And put iN ANOther SICK CALL slip.

Sick CAll dAys are MoNdAy thru FridAy when A doctor is present, No doctor is iN the hospital ON the week-end, And thats when I was fiNAlly send to the hospital oN SaturdAy July 24, 2004, After seekiNg medi-CAl Attention siNce the 21st of July, 2004.

C/o Walker showed deliberate indifference to my pleas for medical Attention And subjected PLAiNtiff to cruel and unusual punishment by denyiNg me the care and treatment that is the right of ANy human being should receive.

## IV-C

C/O Walker was aware of Plaintiff's medical condition and needs at all times, C/O Walker was in charge of Plaintiff's dormitory and therefore saw Plaintiff every half hour during his security check of the area, coupled with his security clock time punch check, said security clock was just a few feet away from Plaintiff's bunk hence defendant C/O Walker saw Plaintiff every day for an entire on a daily basis after Plaintiff sustained his injury to his left knee.

C/O Walker is not and never was ignorant of Plaintiff's injury and/or medical, for C/O Walker was the first officer to see Plaintiff on the morning 8 to 4 shift, but showed deliberate indifference towards Plaintiff

Even defendant's Exhibit-B in his motion for summary judgment, clearly shows and states that C/O Walker was notified by the nurse on July 23rd, 2004, which time clearly states at 11:20 am, but still never sent Plaintiff to sick call as he said that he would, thereby subjecting Plaintiff to continued pain and suffering. Plaintiff was going to sick call at 10:00 am when C/O Walker stopped him on July 23rd 2004.

IV-D

Plaintiff further contends that C/O Walker violated medical protocol, which firmly is established at S.C.I., to allow any prisoner with a medical need to be sent to the prism hospital for treatment at any time, day or night, without being listed on the sick call sheet.

When Plaintiff was at the Inmate Grievance Board hearing, Lt. Johnson, wondered out aloud, "why didn't they just sent him over to the hospital for treatment?"

Plaintiff clearly states that C/O Walker denial of medical attention and fabrication of SCI medical procedural policy was malicious and sadistic at best and defendant has produced NO material facts to show otherwise, but is relying solely on legal jargon to free him from culpability. Therefore defendants motion for summary judgment should be Denied.

See: Exhibits 6, 7.

## V

### "Defendants Kearney, Dukes And Walker are stripped of Immunity"

Section 1983 of Title 42, United States Code, reads in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress". 42 U.S.C. § 1983

While suits against the State itself are thus barred, suits against State officials allegedly acting in violation of the Constitution are not. A suit alleging a violation of federal law strips a State officer of his official authority and is therefore not considered to be an action against the State. Ex parte Young, 209 U.S. 123, 159 28 S. Ct. 441, 453, 52 L. Ed. 714 (1908)

## V. A

An unconstitutional act is "void" and therefore does not impart to the officer immunity from responsibility to the supreme authority of the United States. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102, 104 S. Ct. 900, 909, 79 L. Ed. 2d 67 (1984) Since the state could not authorize the action, the officer considered to be stripped of his official character, is subjected in his person to the consequences of his individual conduct. Id.

Therefore, when sued for injunctive relief, a state official is a "person" under Section 1983 because suits for prospective relief brought against those acting in their official capacity are not treated as actions against the state. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 3106 n. 14, 87 L. Ed. 2d. 114 (1985)

The role of the courts, then, is to enforce constitutional standards and to protect the constitutional rights of prisoners. Ruiz v. Estelle, 679 F. 2d 1115, 1126 (5ᵗʰ Cir. 1982)

## CONCLUSION

Prison officials show deliberate indifference if they prevent an inmate from receiving recommended treatment or deny him access to medical personnel capable of evaluating his need for treatment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3rd Cir. 1979)

A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)

Defendants' have presented no genuine issues and/or material facts to contradict the material facts and genuine issues of the Plaintiff's claims of deliberate indifference and cruel and unusual punishment, hence Defendants have not met the burden of proof, as they are required to under Fed. R. Civ. P. 56 (c). Consequently, the defendants motion should be denied for summary judgment relief.

In addressing the exhaustion requirements of the Prison Litigation Reform Act, Plaintiff contends that

## Conclusion II

Defendants' have not presented to the court Plaintiff's original #584 grievance form that he filed and nor have the defendants showed the court the #175 form confirming there investigation of Plaintiff #584, hence the court must ask itself why have the defendants' left out of its brief for summary judgment such documents, simply put, defendants lapse in doing so is because in defendants exhibit-E p.3 paragraph E. clearly states that, "no staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making". On p. 4 of Exhibit-E under Level 1 (Informal Resolution): Housing unit supervisors shall investigate, document all findings on form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Sgt. Dukes is and was the unit supervisor at the time and on whom I filed my original against, and subsequently investigated his own actions in complete violation of Inmate Grievance Procedure.

## Conclusion III

Hence All Actions taken Against Plaintiff were "tainted" And thereby constituted A fruit of A poisoness tree scenario which resulted in Plaintiff being subjected to reprisals by defendant Dukes from August 2, 2004 until Plaintiff was taken out of medium security in handcuffs And under K-9 escort on September 3rd, 2004 to the behavior modification unit under orders from Sgt. Dukes, which were in violation of the Inmate Grievance procedure on p. 2, paragraph H. of defendants Exhibit -2, to be free from "Reprisals based solely on their participation or use of the IGP," consequently, Plaintiff is still locked up 2 years And 7 months later And has been given permanent classification status to Super Max based on the complaints Against me by Sgt. Dukes. Hence it is no Accident that there Are no records, transcripts or document, such as *584, *175 forms And/or Agreements reached by resolution At the Inmate Grievance Board hearing

But yet, the defendants' seek to insult the court's intelligence by...

## Conclusion IV

Asking the Court to grant them summary judgment on a motion frivolous at best and to just ignore Plaintiffs genuine issues and material facts the same way defendants' IGNORED Plantiff's cries for medical attention when he was under defendants' supervision.

Defendants are in denial, "like the man that lived in the bottom of the boat who got thirsty, instead of going up top for water, he decided to knock a hole in the bottom of the boat, and when confronted, he denied his actions", but the genuine issues and the material facts drowned him, and he had no one to blame for his deliberate indifference that he showed to the other occupants of the boat, whom he subjected to cruel and unusual punishment by ignoring their pain and sufferings; consequently, the Court must deny the defendants' motion for summary judgment.

In closing, the United States Supreme Court held that prisoners were not required to plead exhaustion in their lawsuits.

## Conclusion I

That the Prison Litigation Reform Act did not require naming each defendant in a previously filed grievance, and that failure to exhaust some claims administratively did not mandate the dismissal of an entire suit that also contained exhausted claims.

See: JONES v. BOCK, Slip Opinion, U.S. Supreme Court, Case No. 05-7058 (Jan. 22, 2007.)

Plaintiff affirms that all informations, exhibits, material facts and genuine issues are the truth herein enclosed.

Plaintiff clearly states that he acted in good faith at all times and places to bring about an honest, fair and just resolution, but was instead subjected to assaults, harrassment and unfair punishment and continuous Reprisals by the defendants, which he still endures to this day in violation of his Constitutional Rights as guaranteed to the Plaintiff by the Constitution of the United States of America.

IM. Emmanuel Redden
SBI# 092507 UNIT S Hu
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Office of the Clerk
U.S. District Court
844 N. King St. Lockbox 18
Wilmington, De. 19801-3570
GMS

THIS LETTER WAS SENT BY AN INMATE
WHO IS IN STATE PRISON. THE STATE
IS NOT RESPONSIBLE FOR DEBTS INCURRED
OR FOR THE CONTENTS OF THE LETTER