IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EMANUEL REDDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 05-238-GMS |
| | ) | |
| WARDEN KEARNEY, SGT. DUKES, | ) | |
| and C/O WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Emanuel Redden ("Redden"), a prisoner incarcerated at Delaware Correctional Center ("DCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 3.) The complaint alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Now before the court is the defendants' motion for summary judgment, supporting brief, and Redden's response thereto. (D.I. 21, 22, 25.) For the reasons that follow, the court will grant in part and deny in part the motion for summary judgment.

### II. BACKGROUND

At the time of the occurrence, Redden was housed at the Sussex Correctional Institution ("SCI"). Redden's complaint alleges that on July 18, 2004, he injured his knee on steel that was protruding from the left edge of his bunk. (D.I. 2.) Redden alleges that the defendants Sgt. Dukes and C/O Walker, "as a result of the defendants dislike for him, conspired to deny him

medical attention, acted in complete disregard to his serious medical needs, and were indifferent to his needs.[1] *Id.* Defendants move for summary judgment on the grounds that state officials are not persons subject to suit under 42 U.S.C. § 1983; state officials are immune from liability for claims brought against them in their official capacity under the Eleventh Amendment and the doctrine of sovereign immunity; the defendants are immune from suit under the doctrine of qualified immunity; the complaint fails to allege personal involvement on behalf of Warden Kearney; no support exists for Redden's Eight Amendment claims against the defendants; and Redden has failed to exhaust his administrative remedies. (D.I. 22.)

Redden was injured on July 18, 2004, but he did not tell anyone of his injury because it did not bother him. (D.I. 22, ex. A, 23-24.) On July 21, 2004, Redden noticed swelling and/or bleeding of his left leg. *Id.* at 25-26. That evening, Redden spoke to shift commander Sgt. Sam Hastings ("Sgt. Hastings"). *Id.* at 28. Sgt. Hastings told Redden that he would inform Sgt. Dukes of Redden's injury for the purpose of getting Redden to sick call *Id.* at 28-29. Sgt. Hastings told Redden either late in the evening of July 21 or early morning on July 22, that he had spoken to Sgt. Dukes. *Id.* at 29.

The evening of July 22, 2004, when Redden saw Sgt. Hastings, he told him he did not go to sick call, so Sgt. Hastings told Redden to fill out a sick call slip, which is the one found at Exhibit B. *Id.* at 35. Redden testified that he had waited until July 22, 2004, to fill out the sick call slip because Sgt. Hastings said he would put Redden's name on the sick call list. *Id.* at 35.

---

[1]Redden's opposition to the motion for summary judgment contains a retaliation argument. The complaint, however, does not raise such a claim and, therefore, the court will not consider the argument.

The record contains a completed the sick call request form dated July 22, 2004.[2] (D.I. 22, ex. B.)
The slip states, "Officer Walker notified and will send I/M to sick call." *Id.* at ex. B.

The next day, July 23, 2004, Redden was called to be taken to the medical aid unit but did
not appear because he had fallen asleep. *Id.* at exs. A, 13, 38, C, B. Someone awakened him, but
by the time Redden arrived at the gate, it was too late. *Id.* at ex. A, 13. Redden explained that he
limped to the gate, and blood was draining from his knee. *Id.* C/O Walker stopped Redden from
going out the gate and told Redden to go back to the tier because sick call was over. *Id.* at 31.
Inmate Keith Thompson ("Thompson") states that on July 23, 2004, Redden was told by one
C/O that he could not go to sick call because his name was not on the sick call list. (D.I. 22, ex.
C.) Thompson further states that later in the morning on the same day, Redden was told by a
C/O that he could not go to medical because it was "too close to count time." *Id.* Inmate Andre
Owens states that Redden was called to sick call by C/O Walker, but when Redden arrived at the
gate, he was told that he had taken too long to respond and Redden was refused medical
attention. *Id.*

Redden testified that the first time he first spoke to C/O Walker was on the day that he
did not go sick call. (D.I. 22, ex. A, 30.) Redden did not speak to Sgt. Dukes until after he
spoke to C/O Walker.[3] *Id.* Later, Sgt. Dukes put cardboard across the edge of Redden's bed. *Id.*

Redden was seen at the infirmary on Saturday, July 24, 2004, and received treatment and
medication for his left knee injury. *Id.* at ex. A, 50, 52. The severity of his pain was eight on a

[2]Redden testified that he was unsure of the date when he submitted a sick call slip. (D.I. 22, ex. A, 35, 49.)

[3]Redden testified that he was not sure whether it was on July 21 or July 22, 2004, when he told Sgt. Dukes and/or C/O Walker about the injury. (D.I. 22, ex A, 27-32.)

scale of one to ten,[4] and his left leg was swollen with an open area to the knee. *Id.* at ex. D. The left leg measured 19 ½" compared to the right leg which measured 16 ½". *Id.* Redden was admitted to infirmary on July 26, 2004, and remained there until August 2, 2004 when he was released to general population. *Id.* at ex. D. Redden received ongoing treatment and his injury was fully healed by September 2004. *Id.* at ex. A, 54.

Following release from the infirmary, Redden submitted a grievance complaining that C/O Walker stopped him from going to an emergency sick call because sick call was over. (D.I. 22, ex. F.) The grievance was forwarded to the resident grievance committee ("RGC") on September 10, 2004. *Id.* It was resolved at level I on September 14, 2004. The remedy requested was "leaving it up to the IGC (i.e., institutional grievance chair)" *Id.* Redden testified that he signed off on the grievance, but wanted to go forward with it. (D.I. 22, ex. A, 44.) Redden testified that the grievance board members voted to verbally reprimand the defendants. *Id.* at 61. His discovery responses contain the same information. *Id.* at ex. C.

Redden named Warden Kearney as a defendant because he was in charge of SCI. (D.I. 22, ex. A, 7.) Redden wrote to Kearney in September 2004, following his injury, but never heard anything. *Id.* at 8. Redden testified that Warden Kearney did not cause him to injure his leg. Nor did Warden Kearney prevent him from submitting a sick call slip prior to July 22, 2004. *Id.* at 47.

## III. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to

---

[4]The state defendants incorrectly argue that Redden did not complain of severe pain when he was seen on July 24, 2004. (D.I. 22 at 15.)

-4-

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Persons under § 1983/Eleventh Amendment Immunity

The defendants seeks summary judgment as to the claims raised against them in their official capacity arguing they are not persons subject to suit under § 1983 and they are entitled to Eleventh Amendment immunity. The Eleventh Amendment bars suits against states, *see Bolden*

-5-

*v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991), and claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989). Neither states nor state officials sued in their official capacities for money damages are "persons" within the meaning of § 1983. *Will*, 491 U.S. at 69; *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

A state, however, may waive its immunity under the Eleventh Amendment. Such waiver must be in the form of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." *Ospina v. Department of Corr.*, 749 F. Supp. 572, 578 (D. Del. 1990) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)). The State of Delaware has not consented to Redden's suit or waived its immunity under the Eleventh Amendment. To the extent Redden alleges claims against the defendants in their official capacities, the defendants are entitled to summary judgment.

## B. Medical Needs

The defendants move for summary judgment, arguing that Redden cannot support a claim for deliberate indifference to a serious medical need under the Eighth Amendment. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

-6-

A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

The defendants do not take issue with Redden's position that he had a serious medical need. They argue, however, that his unsupported allegations are insufficient to prove that the defendants were deliberately indifferent to that medical need.

### 1. Warden Kearney

Redden named Warden Kearney as a defendant because he was in charge of SCI. Redden testified that he did not write to Warden Kearney September 2004. By that time, Redden had received medical treatment and his injury had healed.

To the extent that Redden seeks to hold Warden Kearney liable based upon his supervisory position, it is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

There is no evidence before the court that indicates Warden Kearney was the "driving force [behind]" any alleged constitutional violations. Moreover, there is no evidence that Warden Kearney was aware of Redden's complaints and remained "deliberately indifferent" to his plight. *Sample v. Diecks*, 885 F.2d at 1118. Similarly, there is no evidence to support a finding that Warden Kearney had any personal involvement in Redden's alleged wrongs. "A

-7-

defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Based upon the foregoing, the court will grant the defendants' motion for summary judgment as to the claims raised against Warden Kearney.

### 2. Sgt. Dukes

Redden injured himself on July 18, 2004, and notified correctional staff of his injury on July 21, 2004, when the injury began to bother him. Redden was not sure when he submitted a sick call slip, because he had relied upon Sgt. Hastings who had told Redden he would speak to Sgt. Dukes to get Redden to sick call. When Redden told Sgt. Hastings on the evening of July 22, 2004, that he had not been summoned to sick call, Sgt. Hastings told Redden to fill out a sick call slip. The record reflects that Redden submitted a sick call slip on that date.

The next day, July 23, 2004, Redden was summoned to sick call but, because he was sleeping, he missed the call and was late in reporting. Redden testified he limped to the gate, and that he knee was bleeding. Nonetheless, the record contains references that C/O Walker sent Redden back to his cell because sick was over, it was "too close to count time" or Redden had taken too long after being summoned. Redden testified that the first time he spoke to C/O Walker was the day he missed the sick call. It was after that when he first spoke to Sgt. Dukes when Sgt. Dukes gave him cardboard to tape over the metal protruding from his bed. The next day, Saturday, July 24, 2004, Redden received medical treatment for his injury. Two days later he was admitted to infirmary where he remained for approximately one week.

Redden argues that Sgt. Dukes was aware of his injury and his need to obtain medical treatment, but the record reflects that the only time Redden actually spoke to Sgt. Dukes was

-8-

when Sgt. Dukes visited Redden's cell and gave him cardboard to cover up the metal protrusion. Redden argues that he spoke to Sgt. Dukes, but the deposition transcript provided to the court does not reflect a discussion between the two regarding his medical condition. After reviewing the record, the court finds that there is an absence of material fact and insufficient evidence to enable a jury to reasonably find for Redden on the issue of whether Sgt. Dukes was deliberately indifferent to Redden's serious medical need. Therefore, the court will grant the defendants' motion for summary judgment as to Sgt. Dukes on the Eight Amendment claim.

### 3. C/O Walker

Viewing the evidence in the light most favorable to Redden, there remains a genuine issue of material fact whether C/O Walker was deliberately indifferent to Redden's serious medical needs. The record reflects that C/O Walker was notified that Redden requested medical services and was to send Redden to sick call. Nonetheless, Redden, who limped to the gate and was bleeding from the knee, and whose leg was grossly swollen, was refused medical treatment because C/O Walker stated that either it was too late, sick call was over, or it was too close to count time. Accordingly, the court concludes that Redden has adduced sufficient evidence to defeat the defendant's motion for summary judgment as to C/O Walker on the Eight Amendment issue of deliberate indifference to a serious medical need.

C/O Walker contends that he is entitled to qualified immunity. He argues that once Redden provided notice of his injury to correctional officials, he was provided with medical treatment. A two-step test is used to determine if C/O Walker is entitled to qualified immunity. First, the court must examine whether or not the alleged conduct, taken in the light most favorable to plaintiff, violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

"If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the allegations amount to the violation of a constitutional right, the court must proceed to the second inquiry and determine if the right was "clearly established in the specific context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

With regard to the first prong, it is undisputed that the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The second prong requires that the court determine whether C/O Walker's actions were objectively reasonable. Here, there remains a genuine issue of material fact as to whether C/O Walker was deliberately indifferent to Redden's serious medical need. The court thus concludes that a determination of the reasonableness of C/O Walker's actions is more appropriately left to the province of the jury. Accordingly, the court will deny C/O Walker's motion for summary judgment on the issue of qualified immunity.

## C. Administrative Remedies

The defendants argue that Redden failed to exhaust his administrative remedies and, therefore, they are entitled to summary judgment. The defendants argue that Redden only submitted a grievance against C/O Walker and, therefore, he failed to begin any grievance process against Sgt. Dukes and Warden Kearney. Additionally, they argue that while the grievance against C/O Walker appears to be resolved, Redden is still required to exhaust his

-10-

administrative remedies.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, –U.S.–, 127 S.Ct. 910 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Under *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to brining suit in federal court." *Id.* at 2384. As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *See Woodford*, 126 S.Ct. at 2388. The PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner*, 532 U.S. 731 (2001).

-11-

Delaware Department of Correction ("DOC") administrative procedures provide for a multi-tiered grievance and appeal process. At level I, for informal resolutions, an inmate who wishes to grieve a particular issue must express the grievance in writing within seven calendar days following the incident and forward it to the institutional grievance chair ("IGC"). The grievance is reviewed by the IGC and investigated. Resolution by the IGC ends the inmate grievance procedure.

At level II, if the grievance is unresolved, then the inmate is entitled to a hearing before the RGC. The RGC makes a recommendation and forward it to the IGC who forwards the recommendation to the warden or the warden's designee for review and concurrence. If the warden or warden's designee and grievant concur with the RGC recommendation the grievance is deemed resolved and the IGC closes the case. It the matter is unresolved, it proceeds to Level III. If the RGC fails to obtain the concurrence of the warden, the inmate is entitled to review of the matter by the bureau grievance officer ("BGO"). The BGO makes a recommendation to the bureau chief of prisons who may accept or reject to the BGO's recommendation. The bureau chief of prison's decision is final. (D.I. 22, ex. E, Inmate Reference Manual, ch. J1, 1-6.)

The documents submitted by the defendants indicate that Redden's grievance was resolved at level I. The inmate grievance procedure provides that resolution at level I ends the inmate grievance procedure. In *Ross v. County of Bernalillo*, the Tenth Circuit held that "[o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete." 365

-12-

F.3d 1181, 1187 (10th Cir. 2004); *accord McGrath v. Johnson*, 67 F. Supp. 2d 499, 510 (E.D. Pa.1999); *Brady v. Attygala,* 196 F. Supp. 2d 1016, 1021 (C.D. Cal. 2002).

The grievance report indicates that Redden left the matter up to the IGC; and that the matter was resolved. From the documents provided to the court, it appears that Redden received the relief he requested, particularly, in light of Redden's testimony that the grievance board members voted to verbally reprimand the defendants. Therefore, the court will deny the motion for summary judgment on the issue of failure to exhaust administrative remedies.

## V. CONCLUSION

For the above stated reasons the court will grant in part and deny in part the defendants' motion for summary judgment. The court will grant the motion for summary judgment on the issues of persons subject to suit under 42 U.S.C. § 1983, Eleventh Amendment immunity, and all claims raised against Warden Kearney and Sgt. Dukes. The court will deny the motion for summary judgment on the issues of failure to exhaust administrative remedies, C/O Walker's qualified immunity, and the Eight Amendment claim against C/O Walker. Warden Kearney and Sgt. Dukes will be dismissed from the case. C/O Walker will remain as a defendant. An appropriate order will be entered.

_Feb 15_____, 2008
Wilmington, Delaware

_____
CHIEF, UNITED STATES DISTRICT JUDGE

FILED

FEB 15 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMANUEL REDDEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|       v. | ) Civ. Action No. 05-238-GMS |
| | ) |
| WARDEN KEARNEY, SGT. DUKES, | ) |
| and C/O WALKER, | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

At Wilmington this 15th day of _____Feb_____, 2008, for the reasons set forth in

the Memorandum issued this date;

    Defendants' motion for summary judgment (D.I. 21.) is **granted** in **part** and **denied** in

**part**, as follows:

    1. The motion for summary judgment is **granted** on the issues of persons subject to suit

under 42 U.S.C. § 1983, Eleventh Amendment immunity, and all claims raised against Warden

Kearney and Sgt. Dukes.

    2. The motion for summary judgment is **denied** on the issues of failure to exhaust

administrative remedies, C/O Walker's qualified immunity, and the Eight Amendment claim

against C/O Walker.

    3. Warden Kearney and Sgt. Dukes are dismissed from the case. C/O Walker remains as

a defendant.

CHIEF, UNITED STATES DISTRICT JUDGE

**FILED**

FEB 1 5 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE